UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff*,<br><br>    *vs.*<br><br>JOSHUA WALDMAN,<br>    *Defendant.* | )<br>)<br>)<br>)     2:13-cr-00039-JMS-CMM-1<br>)<br>)<br>)<br>) |

## ORDER

On June 3, 2014, the Court held a hearing on Defendant Joshua Waldman's Motion to Dismiss the Indictment. [Filing No. 44-5.] Mr. Waldman appeared in person *pro se* and by standby counsel William Dazey, Jr., and the Government appeared by counsel James Warden. The Court Reporter was Jean Knepley. The Court heard testimony from Jason Cruze, Lieutenant Deborah Moore and Lieutenant Scott Young.

In his Motion to Dismiss, Mr. Waldman alleges that the Government has violated the Speedy Trial Act, 18 U.S.C. § 3161, and seeks dismissal of his indictment to remedy the violation, [Filing No. 44-5 at 1]. For the following reasons, the Court now **DENIES** Mr. Waldman's Motion to Dismiss.

### I.
#### BACKGROUND

**A.**     **The Charges Against Mr. Waldman**

Mr. Waldman is alleged to have assaulted Officer Jason Buescher on June 30, 2013, at the Federal Correctional Complex in Terre Haute, Indiana. [Filing No. 1 at 1.] The Government is pursuing a charge of assault on an officer, under 18 U.S.C. § 111. [Filing No. 1 at 1.] Mr. Waldman argues he struck Officer Buescher in self-defense. [Filing No. 44-4 at 4-15.]

1

### B. Mr. Waldman's Motions to Continue

Mr. Waldman was arrested on October 17, 2013, [[Filing No. 11 at 1](#)], and his first trial date was set for December 16, 2013, [[Filing No. 8 at 2](#)]. On November 5, 2013, Mr. Waldman submitted a Motion to Continue the pretrial conference and trial date stating a need for additional time to adequately prepare. [[Filing No. 15 at 1-2](#).] The Court granted Mr. Waldman's motion for a continuance, setting the pretrial conference for February 20, 2014, and the trial for March 3, 2014. [[Filing No. 16 at 1-2](#).] On February 18, 2014, at a status conference with both parties, Mr. Waldman orally moved to continue the February pretrial conference and trial date. He had just waived his right to counsel and sought more time to adequately investigate alleged video footage of the assault, the identity of inmate witnesses, and the possibility of filing an insanity defense. [[Filing No. 22 at 3](#).] The Court granted Mr. Waldman's Motion, finding that the ends of justice were served by allowing Mr. Waldman more time to prepare, and set the pretrial conference for June 19, 2014, and the trial for June 30, 2014. [[Filing No. 22 at 3](#).] Meanwhile, other discovery issues were brought to the Court's attention and resolved, and it was revealed that contrary to earlier representations to the Court, mass interview forms existed, some of which related to Mr. Waldman's case. These forms were made available to Mr. Waldman and standby counsel in late March or early April 2014. On May 19, 2014, at a telephonic status conference, Mr. Waldman again orally moved to continue the trial date, seeking additional time to investigate inmate witnesses. [[Filing No. 42 at 2](#).] The Court granted Mr. Waldman's Motion, and rescheduled the final pretrial conference for October 3, 2014, and the trial date for October 14, 2014, again finding that the interests of justice were served by affording him additional time to conduct his investigation and prepare for trial. [[Filing No. 42 at 3](#).]

### C. Mr. Waldman's Pending Motion to Dismiss the Indictment

Also at the May 19, 2014 telephonic status conference, Mr. Waldman orally sought dismissal of his indictment to remedy the Government's alleged violation of the Speedy Trial Act. He followed up his request with a written motion, [Filing No. 44-5]. Mr. Waldman argues that the Government's belated discovery disclosure counted against the speedy trial clock, thus impermissibly delaying his trial. [Filing No. 44-5 at 1.] He claims that during pretrial discovery, the Government delayed disclosure of testimonial reports that are roughly 800 pages in length and some are apparently favorable to Mr. Waldman. [Filing No. 46 at 2.] Though the Bureau of Prisons prepared the reports in July 2013, the Government did not disclose them to Mr. Waldman until March 2014. [Filing No. 46 at 2.] The Government concedes that its discovery disclosure was delayed but, in its defense, argues that the delay was inadvertent and that Mr. Waldman has not been prejudiced as a result. [Filing No. 46 at 3.] The Government argues that a continuance, not dismissal, is the appropriate remedy for Mr. Waldman. [Filing No. 46 at 3.]

## II.
### FINDINGS OF FACT

### A. Speedy Trial Clock

Between Mr. Waldman's initial appearance on October 17, 2013, [Filing No. 11 at 1], and his initial trial date of December 16, 2013, [Filing No. 8 at 2], the Court observed two national holidays, Columbus Day and Veteran's Day; thus two days are excluded from the speedy trial clock. Furthermore, because Mr. Waldman requested three motions for continuance, 305 days have been excluded from the speedy trial clock. Given these exclusions, fifty-seven days have elapsed between Mr. Waldman's arrest and his trial date, leaving thirteen days remaining on the clock.

### B. Belated Disclosure

At or around the time of the incident between Mr. Waldman and Officer Buescher, there were rumors at the prison that a white inmate intended to assault a correctional officer. Following the altercation involving Mr. Waldman, who is white, the warden at the Federal Correctional Complex charged Bureau of Prisons Lieutenant Scott Young with conducting mass inmate interviews to investigate the intelligence about the assault and to determine whether the incident with Mr. Waldman was related. The interviews were conducted not only with a focus on the incident involving Mr. Waldman, but also the broader concern about a potential assault on a correctional officer. Lieutenant Young should have made sure, but did not, that the interview forms were conveyed to Jason Cruze, who is the Bureau of Prisons ("BOP") case agent working Mr. Waldman's criminal case. The reports were found in late March 2014, when a successor employee took over Lieutenant Young's desk. The failure to disclose the reports was an oversight, and not an intentional withholding of evidence by the BOP or the Government. The first time the Assistant United States Attorney learned of the interview forms was late March 2014, and he promptly provided them to Mr. Waldman and standby counsel.

The Court also finds that there was never any video footage created of the incident that forms the basis of this charge.

### III.
#### CONCLUSIONS OF LAW

The Speedy Trial Act[1] requires that after indictment, an accused's trial "shall commence within seventy days from the filing date . . . of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending . . .

---

[1] In its response to Mr. Waldman's Motion to Dismiss and at the hearing, the Government argued that it had not committed any Due Process or *Brady* violations. However, Mr. Waldman did not raise such claims, so the Court will not address the Government's responsive argument.

." 18 U.S.C. § 3161(c)(1). However, the Act excludes certain delays from the speedy trial clock, such as:

> [a]ny period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(7)(A). When a court is deciding whether a defendant's speedy trial rights have been violated, the court must consider "whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." *U.S. v. White*, 443 F.3d 582, 588 (7th Cir. 2006) (quotation omitted).

Mr. Waldman, while acknowledging he (or his counsel) has moved for each continuance, seeks a finding that his continuances should not count against him, and that the resulting delay should be considered not excludable under the Act because of the belated disclosure of the interview forms. He cites no authority for this proposition, but the Court will attempt to address it.

### A.     Length of Delay

The delay between the creation of the mass interview forms and their production by the Government is approximately eight months. "The length of time from accusation to trial is a triggering mechanism," and without a "presumptively prejudicial" delay, the Court need not consider other factors in the speedy trial analysis. *White*, 443 F.3d at 589-90. The Seventh Circuit Court of Appeals has found that a nine-month delay is sufficient to trigger the speedy trial analysis, *White*, 443 F.3d at 589, thus, the Court will consider the eight-month delay and proceed with the analysis.

### B. Blame for the Delay

In determining whether a defendant's speedy trial rights have been violated, a court considers "whether the government or the criminal defendant is more to blame for [the] delay." *White*, 443 F.3d at 589. Mr. Waldman has moved for each continuance contributing to his trial's delay, thereby excluding 305 days from the speedy trial clock and leaving thirteen days remaining on the clock. [Filing No. 15 at 1-2; Filing No. 22 at 3; Filing No. 42 at 2.] The Government has not made any motions for continuance, and did, in fact, object to Mr. Waldman's Motion to Continue on May 19, 2014. [Filing No. 42 at 2.] Though the Government did not promptly disclose the interview forms, Mr. Waldman was the movant in each circumstance. Mr. Waldman initially asked for a continuance because he decided to represent himself and needed time to identify inmate witnesses who may have knowledge of the incident and conduct other discovery. He now knows who they are and has sought an additional continuance to prepare his defense armed with that knowledge. Indeed, Mr. Waldman was provided the mass interview forms sometime in early April, and more than 60 days before the June 30, 2014 trial date. He nevertheless asked for, and was granted, more time to prepare.

### C. Prejudice

Avoiding prejudice to the defendant and his case is the primary interest protected by the right to a speedy trial. *Loera v. U.S.*, 714 F.3d 1025, 1031 (7th Cir. 2013). It is especially important to protect a defendant's ability to mount an adequate defense unharmed by fading memories and loss of evidence. *Doggett v. U.S.*, 505 U.S. 647, 654 (1992). Mr. Waldman has not been prejudiced by the Government's belated disclosure. He has had, and will have, ample opportunity to make use of the documented witness testimony belatedly disclosed by the Government and its written form protects against the risk of fading memories. Additionally, to

the extent that a defendant's custodial status bears on whether he has been prejudiced, Mr. Waldman is currently incarcerated for an offense unrelated to his pending charges and cannot be said to suffer prejudice from pretrial detention.

In sum, because Mr. Waldman was the movant each time the Court continued the trial date, and since Mr. Waldman has not been prejudiced by the Government's belated disclosure of the interview forms, the Court finds that there has been no Speedy Trial Act violation in this case.

## IV.
### CONCLUSION

At his request, the Court has granted Mr. Waldman three motions for continuance. Additional time, and not dismissal, is the appropriate remedy for any delayed disclosure. [U.S. v. O'Hara, 301 F.3d 563, 569 (7th Cir. 2002)](). The resulting delay from those continuances is properly excluded from the Speedy Trial Act computation as in the interests of justice, and there has been no violation of the Act. For the reasons stated herein, the Court **DENIES** Mr. Waldman's Motion to Dismiss the Indictment, [[Filing No. 44-5]()].

To ensure the orderly progress of the case, a telephonic status conference is set for **July 7, 2014 at 9:00 a.m.** Counsel for the Government shall make the necessary arrangements with the Terre Haute Prison to confirm that Mr. Waldman will be available for this conference. Mr. Dazey will continue to appear as standby counsel. Counsel shall call 317-229-3670.

**Distribution via ECF only to all counsel of record**

**Distribution via United States Mail to:**

Joshua Waldman
12264-073
Terre Haute – FCI
Terre Haute Federal Correctional Institution
Inmate Mail/Parcels
P.O. Box 33
Terre Haute, IN 47808